UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ADRIAN LOVELL,

                        Plaintiff,

vs.

DEVEREUX FOUNDATION, INC., d/b/a
Devereux Glenholme School,

                        Defendant.

Civil Action No. _____

AUGUST 21, 2017

## **COMPLAINT**

      Plaintiff, Adrian Lovell, brings this Complaint against Defendant, Devereux Foundation, Inc., d/b/a Devereux Glenholme School, and states as follows:

      1.      This Complaint arises from the sexual abuse of Plaintiff Adrian Lovell beginning when he was 15 years old by Melissa Lee Houck. At the time of the abuse, Plaintiff was a student at the residential boarding school operated by Defendant Devereux Foundation, Inc., known as the Devereux Glenholme School located in northwest Connecticut. Melissa Lee Houck was an adult employee of the School. Ms. Houck groomed Plaintiff, introducing him to alcohol and marijuana. She initiated a sexual relationship with him that continued over the course of approximately one year. The Principal of the School, Judith Cooper, knew or should have known of the inappropriate relationship between Houck and Plaintiff, which was open and notorious, yet did nothing to protect Plaintiff, while the School provided Houck with unfettered and unlimited access to Plaintiff.

**Parties, Jurisdiction and Venue**

2. The plaintiff, Adrian Lovell ("Adrian") is an adult male citizen and resident of the State of New York.

3. The Defendant, Devereux Foundation, Inc., is a Pennsylvania corporation doing business in the State of Connecticut as the Glenholme Devereux School, with its principal place of business located at 81 Sabbaday Lane, Washington, Connecticut.

4. Federal Court subject matter jurisdiction is present for this action under 28 U.S.C. §1332(a), as this is an action between citizens of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

5. Plaintiff's claims set forth in this Complaint concern the Defendant's failure to exercise ordinary and reasonable care as a school and as a residential facility which employs staff to supervise children *in loco parentis*, undertaking the safety and well being of the students in its care. To the extent that Defendant employed medical professionals and/or provided any medical care or treatment to its residential students, Plaintiff's claims are not brought against Defendant in such capacity. The allegations of this Complaint do not concern any specialized medical knowledge, nor do they arise out of any medical professional-patient relationship. The alleged fault of Defendant set forth herein is not substantially related to any medical diagnosis or treatment, and does not involve the exercise of medical judgment.

6. Upon information and belief, Defendant is an education/child care facility and is licensed as such; it is not licensed by the Connecticut Department of Public Health, and is therefore not a "health care provider" within the meaning of Title 52 of the Connecticut General Statutes.

7. Venue for this action lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims set forth herein occurred in Connecticut.

## Factual Allegations

8. In or about 2001, when Adrian was 15 years old, his mother sent him to the Devereux Glenholme School (the "School").

9. Adrian resided at the School, where he was in Defendant's custody, and under its supervision and control.

10. Adrian had emotional, behavioral and cognitive issues which required specialized treatment in a residential school. At all relevant times, Defendant operated as a therapeutic boarding school.

11. Adrian's mother sent him to the School after a search for an appropriate institution to meet Adrian's needs, and in reliance on the Defendant's representations that it offered the supervision and attention needed by Adrian.

12. At the time that he attended the School, Adrian was at a critical juncture of his development.

13. The School promoted and represented itself as a specialized, therapeutic boarding school capable of providing Adrian a highly structured environment where he would be strictly supervised and safe.

14. These were important and essential elements to foster Adrian's development. His mother believed that these features offered and promoted by the School were necessary for Adrian's social and emotional well being, and would provide him with the best opportunity to succeed and thrive in the future.

15. Therefore, based on the representations and promotional claims of the Defendant, Adrian's mother enrolled him in the School believing that the School would provide the high level of safety, supervision and structure that was critical for Adrian.

16. Defendant originally placed Adrian in a restrictive dormitory, where he had limited unsupervised movement.

17. Within approximately 6-8 months, Defendant moved Adrian to a less restrictive dormitory which lacked the supervision and structure that he needed.

18. At all relevant times, Defendant employed Melissa Lee Houck ("Houck") to perform work and services at the School. Houck escorted students on field trips; worked with younger students; escorted students to meals, classes and activities; and supervised the boys' dormitory at night.

19. Houck groomed Adrian for sexual abuse by seeking out Adrian and acting flirtatiously with him. She asked him to assist her in escorting the younger children, which he did.

20. After gaining Adrian's trust, Houck brought Adrian alone into the day room on Defendant's premises when no one else was present, where she performed oral sex on him.

21. This began a long-term sexually abusive relationship, involving frequent oral and vaginal sex.

22. During the course of this sexually abusive relationship, Adrian was housed in a campus dormitory lacking adequate supervision and structure for Adrian, which facilitated Houck's liaisons with Adrian.

23. Defendant allowed Houck to change her shift, which she did to have greater unsupervised access and time with Adrian.

24. Houck would remove Adrian from his classes during the school day, and she was permitted to do so even though she was not on the educational, professional or administrative staff.

25. Houck introduced Adrian to alcohol and marijuana, and she supplied Adrian with both. She gave Adrian money and gifts. Their sexual encounters occurred at locations on campus, in Houck's car, and in motels where Houck brought Adrian.

26. The sexually abusive "girlfriend-boyfriend" relationship between Houck and Adrian became open and notorious at the School.

27. At one point, the School's Principal/Executive Administrator, Judith Cooper, questioned both Houck and Adrian separately about their relationship. They each had obvious motives to avoid detection and denied any inappropriate contact.

28. Upon information and belief, despite having actual or constructive knowledge that Houck was engaged in an inappropriate relationship with Adrian, Cooper engaged in no corrective measures to prevent abuse.

29. Cooper did nothing to restrict Houck's interactions with Adrian; did not more closely supervise nor monitor Houck or Adrian; and did nothing to warn or admonish Houck about her contacts with Adrian and the appearance of impropriety. As a result, the sexual relationship between Houck and Adrian continued unabated.

30. Houck's sexually abusive relationship with Adrian was ongoing for at least one year. Eventually, when Adrian was approximately 16 years old, their relationship was discovered and reported to police. The School sent Adrian home without any notice to his mother.

31. Houck was convicted in 2004 of crimes relating to her sexual abuse of Adrian when he was under 16 years of age.

32. The abuse sent Adrian on a pronounced downward spiral, both psychologically and emotionally. He did not finish high school.

**Count I**
**(Negligence)**

5

33. Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 above.

34. At all times relevant to this Complaint, Defendant had a duty of reasonable care that encompassed the hiring, retention and supervision of Houck as an employee of the School.

35. Defendant further had a duty to train teachers, staff and administrators in protecting children from sexual misconduct by an employee, on school grounds or in school activities, and in preventing such misconduct from taking place.

36. At all relevant times, in its management and operation of the School, Defendant undertook to provide Adrian with a strictly supervised and highly structured environment.

37. Defendant, in operating and promoting the school as a private, therapeutic boarding school, undertook to provide a safe and nurturing environment where children would be safe from abuse and where the psychological and emotional well being of the students would be protected and enhanced, not damaged and worsened.

38. Defendant had a duty to train teachers, staff and/or administrators in investigating and responding appropriately to allegations or suspicions of employee-on-student sexual misconduct.

39. At all times relevant, the Defendant was in the special relationship of school-student with Adrian. In the course of this relationship, Defendant had a duty to protect Adrian and prevent foreseeable harms to him.

40. At all times relevant, the Defendant was in the special relationship with Houck of employer-employee. In the course of this relationship, Houck was given unfettered access to and control over children at the School, including Adrian. As such, Defendant had a duty to control Houck's acts and conduct to prevent foreseeable harms.

41. At all relevant times, Defendant knew or should have known that Houck posed a danger and threat to the health, safety and welfare of Adrian.

42. At all relevant times, Defendant knew or should have known of Houck's dangerous sexual propensity for male teenagers, and that she was unfit to serve in any position of supervision or contact with male students.

43. At all relevant times, it was reasonably foreseeable to Defendant that Houck would induce Adrian into an inappropriate sexual relationship.

44. At all relevant times, Defendant knew or should have known of the risk of employee sexual misconduct at the School, yet failed to have in place adequate policies or training intended or designed to prevent it.

45. Defendant breached its duties to Adrian by hiring, retaining and/or failing to exercise reasonable care in supervising Houck, which breach of duties directly and proximately caused Houck's sexual abuse of Adrian.

46. Defendant failed to exercise reasonable care in giving Houck complete, unfettered and unsupervised access to Adrian by, among other things, assigning her to supervise or monitor the boy's dormitory, allowing her to have Adrian assist her with younger children, and allowing Houck to change her schedule so she would have greater access to Adrian.

47. Defendant breached its duties by failing to provide adequate supervision of Adrian, thereby facilitating Houck's contacts with and grooming of Adrian for sexual abuse.

48. At all relevant times, Defendant fostered or condoned a sexually charged or otherwise permissive environment that enabled and/or facilitated employee-on-student sexual misconduct.

49. At all relevant times, Defendant failed in its undertaking to provide Adrian with a safe, strictly supervised and highly structured environment at the School, and as a direct and proximate result, Adrian was sexually abused by Houck.

50. Based on Houck's abusive acts and conduct with Adrian, Defendant breached its duties undertaken in promoting the school as safe and protective of the psychological and emotional well being of its students.

51. At all relevant times, Defendant had inadequate policies and procedures for preventing sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

52. At all relevant times, Defendant had inadequate training to prevent sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

53. Defendant breached its duties of care by failing to limit or control Houck's access to teenage boys, including Adrian; failing to more strictly supervise Adrian; failing to monitor Houck's interactions with Adrian; failing to warn Houck about her contacts with Adrian; and otherwise failing to take precautions to prevent employee-on-student sexual misconduct involving Houck with Adrian.

54. Defendant failed to exercise reasonable care by taking corrective action in response to actual or constructive notice of the significant risk posed by Houck of employee-on-student sexual misconduct.

55. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the

enjoyment of life, inability to lead a normal life, shame, humiliation and regression, and lost wages and costs associated with medical/psychological care and treatment. Additionally, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## Count II
### (Negligence Per Se)

56. Plaintiff repeats and realleges paragraphs 1 through 32 above.

57. At all relevant times, Principal Judith Cooper, and, upon information and belief, other teachers, social workers, guidance counselors and/or staff at the School, had reasonable cause to suspect or believe that Adrian was being sexually abused by Houck.

58. Houck's acts and conduct with Adrian constituted sexual assault in violation of, without limitation, Conn. Gen. Stat. §53a-71(a).

59. Pursuant to Conn. Gen. Stat. §17a-101 (1997), Principal Cooper, and such other teachers or guidance counselors employed at the School who had reasonable cause to suspect or believe that Adrian was being sexually abused or a victim of Houck's violation of Conn. Gen. Stat. §53a-71, were mandatory reporters to the Department of Children and Families.

60. Upon information and belief, such mandatory reporters employed by the School, including Principal Cooper, failed to report Houck's acts and conduct with Adrian, in violation of their mandatory reporting obligation under Conn. Gen. Stat. §17a-101 et seq.

61. At all relevant times, Adrian was within the class of persons protected by Conn. Gen. Stat. §17a-101 et seq. In particular, he was the victim of criminal conduct of Houck in violation of, without limitation, Conn. Gen. Stat. §53a-71, and Principal Cooper, as well as, upon

information and belief, other employees of the School, had reasonable cause to suspect or believe that Adrian was the victim of such criminal act(s) by Houck.

62. The injury suffered by Adrian - childhood sexual abuse - is the type of injury that Conn. Gen. Stat. §17a-101 et seq. was intended to prevent.

63. Defendant is negligent as a matter of law as a result of Principal Cooper's, and, upon information and belief, other employees of the School's, failure to report in response to reasonable cause to suspect or believe Houck's sexual abuse of Adrian, in violation of Conn. Gen. Stat. §17a-101 et seq.

64. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, and lost wages and costs associated with medical/psychological care and treatment.  Additionally, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such.  The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## Count III
**(Recklessness)**

65. Plaintiff repeats and realleges paragraphs 1 through 32 above.

66. At all times relevant, the Defendant was in the special relationship with Houck of employer-employee.  In the course of this relationship, Houck was given unfettered access to and control over children at the School, including Adrian.  As such, Defendant had a duty to control Houck's acts and conduct to prevent foreseeable harms.

67. At all relevant times, Defendant knew that Houck posed a danger and threat to the health, safety and welfare of Adrian.

68. At all relevant times, Defendant knew of Houck's dangerous sexual propensity for male teenagers, and that she was unfit to serve in any position of supervision or contact with male students.

69. At all relevant times, it was reasonably foreseeable to Defendant that Houck would induce Adrian into an inappropriate sexual relationship.

70. At all relevant times, Defendant knew of the risk of employee sexual misconduct at the School, yet failed to have in place policies or training intended or designed to prevent it.

71. Defendant consciously disregarded a known risk of harm to Adrian by hiring, retaining and/or failing to exercise reasonable care in supervising Houck, which recklessness directly and proximately caused Houck's sexual abuse of Adrian.

72. Defendant consciously disregarded a known risk of harm to Adrian by giving Houck complete, unfettered and unsupervised access to Adrian by, among other things, assigning her to supervise or monitor the boy's dormitory, allowing her to have Adrian assist her with younger children, and allowing Houck to change her schedule so she would have greater access to Adrian.

73. Defendant consciously disregarded a known risk of harm to Adrian by placing Adrian in a less restrictive dormitory and in assigning Houck to supervise the dormitory, which recklessness directly and proximately caused Houck's sexual abuse of Adrian.

74. At all relevant times, Defendant fostered or condoned a sexually charged or otherwise permissive environment that enabled employee-on-student sexual misconduct.

75. At all relevant times, Defendant failed in its undertaking to provide Adrian with a safe, strictly supervised and highly structured environment at the School, and as a direct and proximate result, Adrian was sexually abused by Houck.

76. Based on Houck's abusive acts and conduct with Adrian, Defendant breached its duties undertaken in operating the school as a therapeutic boarding school and in promoting the school as safe and protective of the psychological and emotional well being of its students.

77. At all relevant times, Defendant had inadequate policies and procedures for preventing sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

78. At all relevant times, Defendant had inadequate training to prevent sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

79. Defendant consciously disregarded a known risk of harm to Adrian by failing to limit or control Houck's access to teenage boys, including Adrian; failing to more strictly supervise Adrian; failing to monitor Houck's interactions with Adrian; failing to warn Houck about her contacts with Adrian; and otherwise failing to take precautions to prevent employee-on-student sexual misconduct involving Houck with Adrian.

80. Defendant consciously disregarded a known risk of harm to Adrian by failing to take corrective action in response to actual notice of the significant risk posed by Houck of employee-on-student sexual misconduct.

81. As a direct and proximate result of Defendant's recklessness, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the

enjoyment of life, inability to lead a normal life, shame, humiliation and regression, and lost wages and costs associated with medical/psychological care and treatment. Additionally, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## Count IV
### (Breach of Fiduciary Duty)

82. Plaintiff repeats and re-alleges paragraphs 1 through 32 above.

83. Defendant was in the special relationship with Adrian of school-student.

84. Because the School owned and operated by Defendant is a residential boarding school, Defendant undertook custody and assumed a special relationship with Adrian as his custodian-caregiver.

85. In accordance with their special relationship, Defendant was acting in loco parentis with Adrian.

86. As a result of the foregoing, at all relevant times, Defendant owed a fiduciary duty to Adrian, which imposed a duty to protect the safety, care, well-being and health of Adrian while school was in session and he was in Defendant's custody and control.

87. Defendant was also in the special relationship with Houck of employer-employee. In the course of this relationship, Houck was given unfettered access to and control over children at the School, including Adrian. As such, Defendant had a duty to control Houck's acts and conduct to prevent foreseeable harms.

88. At all relevant times, Defendant knew or should have known that Houck posed a danger and threat to the health, safety and welfare of Adrian.

89. At all relevant times, Defendant knew or should have known of Houck's dangerous sexual propensity for male teenagers, and that she was unfit to serve in any position of supervision or contact with male students.

90. At all relevant times, it was reasonably foreseeable to Defendant that Houck would induce Adrian into an inappropriate sexual relationship.

91. At all relevant times, Defendant knew or should have known of the risk of employee sexual misconduct at the School, yet failed to have in place policies or training intended or designed to prevent it.

92. Defendant breached its fiduciary duty to Adrian by hiring, retaining and/or failing to exercise reasonable care in supervising Houck, which breach directly and proximately caused Houck's sexual abuse of Adrian.

93. Defendant breached its fiduciary duty to Adrian by giving Houck complete, unfettered and unsupervised access to Adrian by, among other things, assigning her to supervise or monitor the boy's dormitory, allowing her to have Adrian assist her with younger children, and allowing Houck to change her schedule so she would have greater access to Adrian.

94. Defendant breached its fiduciary duty to Adrian by placing Adrian in a less restrictive dormitory and in assigning Houck to supervise the dormitory, which breach directly and proximately caused Houck's sexual abuse of Adrian.

95. At all relevant times, Defendant fostered or condoned a sexually charged or otherwise permissive environment that enabled employee-on-student sexual misconduct.

96. At all relevant times, Defendant failed in its undertaking to provide Adrian with a safe, strictly supervised and highly structured environment at the School, and as a direct and proximate result, Adrian was sexually abused by Houck.

97. Based on Houck's abusive acts and conduct with Adrian, Defendant breached its duties undertaken in operating the school as a therapeutic boarding school and in promoting the school as safe and protective of the psychological and emotional well being of its students.

98. At all relevant times, Defendant had inadequate policies and procedures for preventing sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

99. At all relevant times, Defendant had inadequate training to prevent sexual abuse of students by employees, and in investigating and responding to allegations, reports or suspicions of employee-on-student sexual misconduct.

100. Defendant breached its fiduciary duty to Adrian by failing to limit or control Houck's access to teenage boys, including Adrian; failing to more strictly supervise Adrian; failing to monitor Houck's interactions with Adrian; failing to warn Houck about her contacts with Adrian; and otherwise failing to take precautions to prevent employee-on-student sexual misconduct involving Houck with Adrian.

101. Defendant breached its fiduciary duty to Adrian by failing to take corrective action in response to actual or constructive notice of the significant risk posed by Houck of employee-on-student sexual misconduct.

102. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, and lost wages and costs associated with medical/psychological care and treatment. Additionally, Plaintiff sustained an aggravation of an existing disease or mental or physical defect

or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

### Count V
### (Premises Liability)

103. Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 above.

104. At all relevant times, Plaintiff was a business invitee of Defendant. He was present on Defendant's premises for its business purposes.

105. Defendant owed a duty to Plaintiff as invitee, while he was on its premises, to protect him or warn him with regard to the reasonably foreseeable acts and conduct of a person on the premises who posed a risk of harm.

106. At all relevant times, Defendant knew or should have known that Houck posed a danger and threat to the health, safety and welfare of Adrian.

107. At all relevant times, Defendant knew or should have known of Houck's dangerous sexual propensity for male teenagers, and that she was unfit to serve in any position of supervision or contact with male students.

108. At all relevant times, it was reasonably foreseeable to Defendant that Houck would induce Adrian into an inappropriate sexual relationship.

109. At all relevant times, Defendant knew or should have known of the risk of employee sexual misconduct at the School.

110. Defendant breached its duty to Plaintiff as an invitee by failing to (i) exercise reasonable care to discover acts of sexual misconduct by Houck that had occurred, were occurring or were likely to occur; and (ii) provide a warning adequate for Adrian to avoid harm from Houck.

111. As a direct and proximate result of Defendant's breach of duty in premises liability, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, and lost wages and costs associated with medical/psychological care and treatment. Additionally, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## Prayer for Relief

WHEREFORE, as to each of the foregoing claims, Plaintiff Adrian Lovell demands against Defendant Devereux Foundation, Inc., compensatory damages, costs, special damages (as to Counts III and IV), punitive damages (as to Counts III and IV), and such other relief as may be available at law or in equity.

## Jury Trial Demand

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 21, 2017        THE PLAINTIFF
                              ADRIAN LOVELL


                              BY:   s/ Frank C. Bartlett, Jr.
                              BARTLETT LEGAL GROUP, LLC
                              Frank C. Bartlett, Jr.  ct26913
                              frank@bartlettlegalgroup.com
                              126 Elm Street
                              PO Box 130
                              Cheshire, CT 06410
                              Tel: (203) 439-7717
                              Fax: (203) 439-7730

Attorneys for Plaintiff
                               - and -
                              *Pending application for & admission pro hac vice:*
                              JEFF HERMAN
                              STUART S. MERMELSTEIN
                              Herman Law
                              5200 Town Center Cir. #5200
                              Boca Raton, FL 33486
                              (305) 931-2200